# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOE WILSON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-490 (RMC) |
| | ) | |
| RAY LAHOOD, SECRETARY, | ) | |
| DEPARTMENT OF TRANSPORTATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Joe Wilson is an accountant with the Federal Highway Administration ("FHWA"). After he was denied a promotion, Mr. Wilson, proceeding *pro se*, brought suit against the Secretary of Transportation alleging race and age discrimination and retaliation. The Secretary now moves for summary judgment. As explained below, the motion will be granted.

## I. FACTS

Mr. Wilson has been employed as an accountant with the FHWA since 2003. He started at the grade level GS-9, was promoted to GS-11 in 2005, and was promoted to GS-12 in 2006. He alleges that he is entitled to promotion on a non-competitive basis and that despite being recommended for, and eligible for, promotion since 2006, the Secretary has failed to promote him to grade GS-13. Compl. ¶ 5. Mr. Wilson claims that in December of 2007, he requested a non-competitive promotion to grade GS-13, and he was required to take a "last minute test with no notice covering matters that have never been within [his] job

responsibilities." *Id*. ¶ 53.[1]

Shortly thereafter, on December 18, 2007, Mr. Wilson contacted an EEO counselor and charged that the Secretary had failed to promote him due to race and age discrimination. Mr. Wilson is an African-American and he was 52 years old in December 2007. Mot. to Dismiss [Dkt. # 6], Ex. 8 (EEO Counselor's Report); *id*, Ex. 11 (EEO Investigation Report). On January 22, 2008, FHWA sent Mr. Wilson a notice of his right to file a discrimination complaint. *Id*., Ex. 9 (Notice). On January 30, 2008, Mr. Wilson filed a formal complaint, and the Department of Transportation's Office of Civil Rights ("DOT OCR") accepted Mr. Wilson's complaint for investigation. *Id*., Ex. 10 (Letter from DOT OCR).

On August 29, 2009, Mr. Wilson again contacted an EEO counselor to file an EEO charge. He alleged that when he requested advanced sick leave, the FHWA retaliated against him due to his prior complaint of discrimination by refusing to grant the advanced sick leave. The FHWA indicated that it would charge him with leave without pay for the advanced sick leave — from August 31, 2009 to September 3, 2009. He also alleged a hostile work environment based on a report from a co-worker, Deera Herron, that she had overheard management making derogatory remarks about him. *Id*., Ex. 19 (EEO Counselor's Report). On October 2, 2009, Mr. Wilson filed a formal complaint with the DOT OCR based on these two allegations. *Id*., Ex. 23 (DOT OCR Complaint). DOT OCR dismissed the complaint for failure

---

[1] Despite notations in the Complaint that pre-2008 discrimination claims were included in a separate case, Mr. Wilson later sought to include such allegations in this case. On April 6, 2010, an EEOC Administrative Judge dismissed Mr. Wilson's 2008 charge of failure-to-promote due to race and age discrimination because the 2008 charge already was pending in this suit. Mot. to Dismiss [Dkt. # 6], Ex. 29 (EEOC Dismissal Notice). The Court deemed the Complaint to include pre-2008 discrimination claims. *See* Minute Order posted Dec. 27, 2010.

to state a claim, noting that the allegations did not demonstrate severe or pervasive conduct that actually affected any term or condition of employment. *Id*. DOT OCR did not comment specifically on the retaliation charge.

On March 24, 2010, Mr. Wilson filed this lawsuit against the Department of Transportation and nine individuals alleging various tort, contract, and discrimination claims. On January 4, 2011, the Court granted a motion for partial dismissal, dismissing all defendants other than the Secretary of Transportation and dismissing all claims other than claims for race discrimination, age discrimination, and retaliation. *See* Opinion [Dkt. # 22]; Order [Dkt. # 23]. The remaining claims allege: (1) race discrimination based on a December 2007 denial of promotion (Count IV); (2) age discrimination based on the same December 2007 denial of promotion (Count VII); and (3) retaliation based on an alleged decision to charge Mr. Wilson with leave without pay from August 31 to September 3, 2009 (Count V).

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements, *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

#### A. Race Discrimination Generally

Title VII prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin in hiring decisions, in compensation, terms, and conditions of employment, and in classifying employees in a way that would adversely affect their status as employees. 42 U.S.C. § 2000e-16. To establish a prima facie case of discrimination, a plaintiff must show: 1) that he is a member of a protected class; 2) that he suffered an adverse personnel action; 3) under circumstances giving rise to an inference of discrimination. *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 144 (D.C. Cir. 2008).

Once a plaintiff establishes a prima facie case, then the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employer's action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant meets this burden, then the plaintiff must have the opportunity to prove, by a preponderance of the evidence, that the legitimate reasons

offered by the employer were not its true reasons, but were a "pretext" for discrimination. *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 804.

In disparate treatment cases where the employer asserts a nondiscriminatory reason for its action, "the prima facie case is a largely unnecessary sideshow." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

> In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not — *and should not* — decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*. Rather, in considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?

*Id.* (emphasis in original).

### B. Age Discrimination Generally

To state a claim for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, a plaintiff must allege that he belonged to the protected age group of 40 years and older and that he suffered an adverse employment action because of his age. As a federal employee, a plaintiff "can establish liability under § 633a in one of two ways. First, [he] can make use of the *McDonnell Douglas* evidentiary framework to establish that age was the but-for cause of the challenged personnel action . . . . Second, [he can show] that age was a factor in the challenged personnel action." *Ford v. Mabus*, 629 F.3d 198, 207 (D.C. Cir. 2010).

### C. Race and Age Discrimination in This Case

In this case, Mr. Wilson fails to make out a prima facie case of race or age discrimination and he fails to establish pretext. He has not presented any evidence or explanation of how race or age played a role in the alleged discrimination. In opposition to this complete lack of evidence or explanation, the Secretary has presented some evidence showing that race was not a factor in its failure to promote Mr. Wilson. During the investigation of his complaint before the EEO, the EEO Counselor created a list of FHWA employees who worked in the same division as Plaintiff and who had been promoted between April 2006 and May 2008. *See* Def.'s Mot. for Summ. J. [Dkt. # 25], Ex. 23 (Career Ladder Promotion List). The list showed that from April 2006 to May 2008 there were ten career ladder promotions in that division — six of the ten employees that were promoted were African Americans. *Id*.

Mr. Wilson contends that he was given an impromptu accounting literacy test — a test that other staff members who had been promoted were not required to take. While one way a plaintiff can show discrimination is by demonstrating that he was treated differently than similarly situated employees who were not part of the protected class, *see George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005), Mr. Wilson has failed to make such a showing. To prove that he is similarly situated to another employee, a plaintiff must show that all of the relevant aspects of his employment situation were "nearly identical" to those of the allegedly comparable employee. *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999). The identified employee must "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them." *Turner v. Billington*, No. 02-219, 2006 WL

618420, at * 5 (D.D.C. Mar. 10, 2006).

Mr. Wilson alleges that other employees who received promotions did not have to pass any sort of proficiency test, yet he does not actually identify any such employees. Further, he does not explain how such unnamed employees were similarly situated. Mr. Wilson bears the burden of proving discrimination, and he cannot support the claim with conclusory allegations that unidentified employees were treated more favorably. *See Greene*, 164 F.3d at 675 (on a summary judgment motion, the nonmoving party may not rely solely on allegations or conclusory statements; he must present specific facts that would enable a reasonable jury to find in its favor).

Moreover, even if Mr. Wilson had made out a prima facie case of discrimination, the Secretary has set forth a legitimate non-discriminatory reason for denying the promotion: that Mr. Wilson was not promoted because he did not demonstrate the knowledge that would have enabled him to perform at the GS-13 level. FHWA promotes its employees "based on job-related criteria and on merit principles." *Id*., Ex. 4 (Personnel Management Manual, Merit Promotion Plan) at ch. 3, § 1, part 3(a). FHWA specifically set forth proficiency levels expected of accountants at each grade level in the Agency in an "Accountant Proficiency Chart." Deputy Chief Financial Officer Margo Sheridan described the areas of Accountant Proficiency for eligibility for a promotion to a grade GS-13 accountant at the FHWA as follows:

> First Area: Knowledge of the U.S. Standard General Ledger and the Associated Trust Fund Guide (highly proficient at GS-13 level);
>
> Second Area: Knowledge of the Government Accountability Office Red Book (highly proficient at GS-13 level);
>
> Third Area: Knowledge of the three Circulars (A-136, A-123, and A-11) published by the Office of Management and Budget (proficient at GS-13 level);

>           Fourth Area:    Knowledge of Statements of Federal Financial Accounting
>                           Standards (knowledgeable proficient (sic) at GS-13 level); and
>
>           Fifth Area:     Knowledge of the Government Accountability Office Yellow
>                           Book, also know as the Federal Government Auditing Standards
>                           (knowledgeable proficient (sic) at GS-13 level).

*Id.*, Ex. 5 (Sheridan Aff.) at 6-8. Mr. Wilson concedes that the Secretary provided the FHWA's Accountant Proficiency Chart through a power point presentation at a staff meeting on November 20, 2007, and that he attended the meeting. *Id.*, Ex. 11 (Pl.'s Admissions Answers) at 1 (admitting Requests for Admission ## 2 & 3); *id.*, Ex. 10 (Discovery Requests) at 13. Deputy CFO Sheridan presented the Chart at the November meeting, explaining that she would use the chart for promotions. *Id.*, Ex. 7 (Dec. 5, 2007 email from Sheridan to CFO Park).

Deputy CFO Sheridan interviewed Mr. Wilson on December 3, 2007 and determined that he did not have the required proficiencies for a promotion to grade GS-13. *Id.*, Ex. 5, (Sheridan Aff.) at 5-8. Two days after the interview, CFO Sheridan summarized her interview of Mr. Wilson in an email to Chief Financial Officer Tom Park and explained why she concluded that Mr. Wilson lacked the necessary knowledge:

> [Mr. Wilson] asserted that he was fully qualified to be a GS-13, and ready to be a GS-14. I then asked him about his current proficiency, using the GS-12 scale. He asserted that he was very proficient in these areas. For the USSGL he said that he saw and understood the journal entries. I asked him to tell me what the major series of SGLs were — he was incorrect for the 1000, 5000, and 4000 series. I then asked him to list the key budgetary SGLs were use (sic) — he named 4610 but incorrectly described it as UDO. He could not identify 4801, 4802, 4901, 4902, 4450, 4620. He asserted that he worked a lot with 132s and 133s — if so, he should know these budgetary accounts very well. GAO Red Book — he could not demonstrate any knowledge. OMB circulars — could not tell me the purpose or title of any of them. GAO Yellow Book — did not know what it was. As audit liaison, he should have known this item better than most accountants in HCFS. Key

> financial management legislation — he cited the acronyms for our authorization legislation (ISTEA, TEA-21, SAFETEA-LU), but could not identify or describe CFOA, GPRA, GMRA, FFMIA, or FMFIA. I told [Mr. Wilson] to go do some homework – that the internet was an excellent source of information — and to come back when he thought he was ready to answer my questions.

*Id.*, Ex. 7 (Dec. 5, 2007 email from Sheridan to CFO Park). In sum, although Mr. Wilson failed to show proficiency for a promotion to the GS-13 level in all five functional areas, Ms. Sheridan urged him to increase his knowledge and encouraged him to set up another interview when he was ready to demonstrate the required proficiencies. *Id.*; *see also id.*, Ex. 5, (Sheridan Aff.) at 9. About two weeks later, on December 18, Mr. Wilson complained to an EEO counselor that he was not promoted due to discrimination.

FHWA supervisors continued to encourage Mr. Wilson. On December 20, 2007 and again on January 8, 2008, CFO Park met with Mr. Wilson. Mr. Wilson stated that he was ready for another interview, and CFO Park suggested that Mr. Wilson schedule another interview with Deputy CFO Sheridan. *Id.*, Ex. 12 (Jan. 8, 2008 email from CFO Park to himself). Mr. Wilson never scheduled another interview.

Mr. Wilson attempts to show pretext by making conclusory allegations that he was in fact qualified for promotion to the GS-13 level and that he was entitled to a promotion because he had successfully worked for more than one year at a GS-12 level. *See* Pl.'s Opp'n [Dkt. # 29] at 9-14. He also denies that the Accountant Proficiency requirements constituted the Agency's standard for promotion, contends that he was singled out for testing, and argues that he was qualified to be promoted to a grade GS-13. *See e.g., id.*; Pl.'s Supplemental Mem. [Dkt. # 32] at 2-5.

Mr. Wilson cannot establish pretext simply based on his own subjective

assessment of his own performance; it is the perception of the decision-maker that is relevant. *See Waterhouse v. Dist. of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000), *aff'd*, 298 F.3d 989 (D.C. Cir. 2002), *abrogated on other grounds by Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 851 (D.C. Cir. 2006); *see e.g.*, *Dorns v. Geithner*, 692 F. Supp. 2d 119, 135 (D.D.C. 2010) (granting summary judgment because the plaintiff had produced no evidence, other than her own subjective opinion, that she performed at a higher level than stated in her performance reviews). Further, Title VII does not permit a court to act as a "super-personnel department" that reexamines an employer's business decisions. *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999).

Mr. Wilson has not presented any evidence that he was discriminated against based on age or race. Moreover, he has not presented any evidence tending to show that the proferred reason for failing to promote him — his failure to qualify for the GS-13 level position — is a mere pretext for discrimination. Accordingly, summary judgment will be granted in favor of the Secretary on the claims for race and age discrimination (Counts IV and VII).[2]

**D. Retaliation**

Count V of the Complaint alleges retaliation based on the decision to charge Mr. Wilson with leave without pay from August 31 to September 3, 2009. The Secretary moved for summary judgment on this claim, and the Court ordered Mr. Wilson to file a response, noting that if he failed to respond to any legal issue or controvert any fact, the Court might deem the

---

[2] Mr. Wilson also continues to argue that he was subject to a hostile work environment. While Mr. Wilson attempted to allege a claim for hostile work environment, the Complaint contained only vague allegations insufficient to state such a claim and thus the claim was dismissed. *See* Mem. Op. [Dkt. # 22] at 13-16.

issue or the fact to be conceded. *See* Order filed Mar. 28, 2011 (citing *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988) and *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992)). Mr. Wilson filed an opposition to the motion and a supplemental memorandum, but he failed to address the alleged retaliation issue. *See* Pl.'s Opp'n [Dkt. # 29]; Pl.'s Supplemental Mem. [Dkt. # 31]. On summary judgment, a court may treat those arguments that the plaintiff failed to address as conceded pursuant to LCvR 7.1(b). *See FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997). Thus, because the issue is conceded, the Secretary's motion for summary judgment on the retaliation claim will be granted and Count V will be dismissed.[3]

## IV. CONCLUSION

The Secretary's motion for summary judgment [Dkt. # 25] will be granted, and this case will be dismissed. A memorializing Order accompanies this Memorandum Opinion.

Date: October 4, 2011

/s/
ROSEMARY M. COLLYER
United States District Judge

---

[3] Moreover, Plaintiff was never charged with leave without pay as alleged in the Complaint. Although Martin Sorensen, Director of Financial Services, initially denied Mr. Wilson's request for leave, when Mr. Wilson asked again, Mr. Sorensen approved the request. *See* Def.'s Mot. for Summ. J. [Dkt. # 25], Ex. 22 (Sept. 14, 2009 email from Sorensen to Wilson). The nuisance of having to ask twice does not constitute a materially adverse action and is insufficient to support a claim for retaliation. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) ("petty slights and minor annoyances" are not actionable).